## MARCH TERM, 1874.

THOMAS and others, appellants, and THE WEST JERSEY RAILROAD COMPANY, respondents.

1. Two arbitrators, after hearing the evidence and arguments, being unable to agree, chose an umpire to act as third arbitrator, and the three met without notifying the parties of the appointment of the third arbitrator, or of the time and place of their meeting, giving no opportunity to the parties to be heard—*Held*, that their action, though believed by themselves to be lawful and proper, was misconduct in the sense of the law, and fatal to the validity of the award.

2. When a new arbitrator is chosen by the original arbitrators, either party has the right to adduce additional testimony and additional arguments if he wishes to do so. He is entitled to such notice of the time and place of meeting as will enable him to prefer his request to be heard.

Thomas *v.* West Jersey Railroad Co.

3. Such notice of appointment, and of time and place of hearing, may be waived by the agreement or conduct of the parties. But such waiver must be clearly proved. The burden of proof is on the party asserting it.

4. Every reasonable presumption will always be entertained in favor of the validity of the award, as in case of a judgment, and the party seeking to impeach it will, therefore, have upon himself the burden of proof to destroy the presumption. But this presumption is destroyed by an admitted absence of notice, and such absence can be cured only by new matter affirmatively shown. The burden, in the latter case, is shifted from the party impeaching to the party supporting the award.

5. Where notice of the appointment and of the time and place of meeting is given, and a party remains inactive and silent, a waiver may be inferred.

6. The award in this case not necessarily excessive.

---

This appeal was from a decree of the late Chancellor, setting aside an award. The opinion is reported in 8 *C. E. Green* 431.

*Mr. P. L. Voorhees* and *Mr. Theodore Cuyler*, for appellants.

*Mr. Browning* and *Mr. Williamson*, for respondents.

The opinion of the court was delivered by
Dodd, J.

By an agreement of October 8th, 1863, the Millville and Glassboro railroad was leased for twenty years to G. W. Thomas, A. S. Porter and N. F. Chew. The right was reserved to the lessors to terminate the contract and retake possession, by giving three months notice, at any time, of their purpose to do so; and provision was made, in that case, for determining, by arbitration, the value to the lessees of the contract of lease, and the damages incurred by, and justly and equitably due them, from its being thus brought to an end.

On the 1st of April, 1868, this terminating notice was given. On the 21st of December, 1868, an agreement was made submitting all matters in difference to two arbitrators selected by the parties, and providing that if unable to agree the two should choose an umpire, who, as

Thomas *v.* West Jersey Railroad Co.

third arbitrator, should join them in the submission; the three, or any two, to make an award. On the 16th of June, 1869, after full presentation of the evidence and arguments, the two were unable to agree, and selected a third, apprising him by letter of his appointment, and stating that all matters from any person, on either side, in any way, should be excluded, with the exception of his two associate arbitrators. On the 24th he was sworn, and the three met for consultation on the 28th and 29th. At the last meeting the terms of the award were agreed on by two of the arbitrators, the remaining one dissenting, and were embodied in the writing now in controversy, which was signed by the two on the 30th, being the day before the last when it was required to be ready. The testimony delivered before the two was written out by a stenographer, and the case was submitted upon arguments in writing. Whether all the testimony, exhibits and arguments presented to the two were afterwards presented to the three acting together, or to the third arbitrator alone, is a point of dispute, but there is no dispute that the three intended to proceed, and did proceed to the making of the award without notice to the parties. They intended to exclude further hearing and proofs, and manifestly regarded such exclusion as in accordance with propriety and law. Against the claim of the lessees for the termination of the lease, the company claimed damages for want of the stipulated care of their road. The award is in favor of the former, and gives them a balance of $159,437.07. The company seek to set it aside on the principal grounds, *first,* that the amount is so excessive as to create a violent presumption of fraud, misconduct or mistake; and *second,* that it was the duty of the arbitrators, upon the disagreement of the two, and selection of the third, to give notice of the fact, and of a time and place appointed for a rehearing, and to have had a rehearing, unless such notice and rehearing were waived by the parties.

In respect to the first ground, the rule expressed in the Chancellor's opinion is, that an award cannot be reviewed,

corrected or set aside, either at law or in equity, because it is erroneous, or because it is plainly excessive, unless the excess is clearly demonstrated, and is so excessive that it is not possible to account for it, except by the corruption or dishonesty of the arbitrators.   It will not be set aside as a verdict at law or a master's report will be, because clearly erroneous, and against the weight of the evidence.   8 *C. E. Green* 433.

Applying either measure or criterion of excess to this award, there is nothing shown in the case, so far as I am able to discover, that would make it the duty of the court to set it aside.   For the complainants it was insisted that the lessees were entitled to no allowance whatever ; that their unexpired term was absolutely worthless.   The defendants, on the other hand, insisted, and not without plausible reasons, that the sum awarded was too small.   The problem submitted to the arbitrators was capable of none but an approximate solution. It was foreseen by the parties to be one specially fit for the tribunal they provided for.   The elements it involved were contingent, and in view of their nature and number, it is plain that conclusions reached by one set of impartial and capable men might well differ much from those reached by another.   Without asserting that the amount here might not fairly have been greater or less, I see no evidence to impeach the good motives or judgment of those by whom it was adopted.   It is said by the complainants to appear from mathematical principles, on the evidence produced by the defendants themselves, that the sum awarded is excessive. But this is far from being clear.   The average net profits for the expired part of the term—four years and eight months—were $26,000 per year, and about $29,000 for the last year, of which part had expired.   These yearly profits might steadily advance.   The increase actually experienced up to the point of termination might continue to go on.   Of this, the arbitrators, under all the facts and conditions of the case, were to judge.   But assuming that no steady increase would occur, and that the average or uniform profits would not exceed, say, $30,000 per annum for

the unexpired term of fifteen years and four months, the amount of the award cannot be shown, on these assumptions, to be necessarily too great. The calculations are simple. Deducting the one-third required to be paid to R. D. Wood, and the further sum of $3000 yearly for their own compensation or wages, and a clear yearly income remains of $17,000. If the rate of interest on safe investments to be made through the whole of the term could be properly put at six per cent. yearly, and prudent men, having regard to the uncertainties of the future, would not be likely to put the rate higher, the present value of these net future profits, or, in other words, the immediate sum to be allowed by the arbitrators in exchange for such profits, would be $167,280, an amount larger than the award by $7843. But the lease, it is said, was to terminate on the death of either one of the lessees; and this contingency, it is suggested, should be allowed for in estimating its value. I think it difficult to see how the lessors are entitled to set up this life risk in diminution of damages. Legitimate calculations on life risks depend exclusively on wide average inductions. How many out of a large number will die in a limited time, may reasonably be predicted. The particular lives that will end, are not permitted to be known. Conjectural estimates by the arbitrators on this point respecting the lessees, could hardly be required, if indeed allowable within their discretion. Not to allow them, would not vitiate their conclusions.

If, however, the value of this annuity, certain of $17,000 for the unexpired term, should be thought to require determination by the probabilities of death, deducible from tables or mortality, the inquiry would relate in that case to the sum requisite to purchase an annuity for the above amount and unexpired term, on the joint lives of the three. This annuity the lessors might be asked to secure from responsible parties, or to pay the lessees its equivalent value. The ages of the latter do not appear in the case, nor the customary principles and usages on which annuities of this description can be purchased. Taking the ages, for illustration, to be

respectively, forty, and resorting to these principles and usages, it is reasonable to believe that such annuity would require for its purchase about $145,000, or about $15,000 less than the amount fixed by the arbitrators. If the yearly yield of the road should be taken as likely to be greater than the sum limited above, this difference would quickly disappear. These figures are obviously by way of illustration.

It is unnecessary to refer to the remaining elements to which the attention of the arbitrators must be presumed to have been turned. By what has already been said it is not meant to declare the amount of the award to be correct, but to indicate why, in view of the debatable materials to be dealt with, and the peculiar and discretionary powers of the tribunal to which they were submitted, the result arrived at is not perceived to be necessarily such as to call for disapproval.

The second ground on which the award is resisted, is the course pursued by the arbitrators in withholding notice of the appointment of the third, and going on without further hearing or proofs. Their action in this respect was held by the Chancellor to be in no wise derogatory to the character or integrity of either of the arbitrators, but nevertheless to be misconduct in the sense of the law and fatal to the validity of the award. The doctrine laid down in the two opinions delivered at different stages of this suit and reported in 6 *C. E. Green* 205, and 8 *C. E. Green* 431, is substantially this, that when the new arbitrator was chosen the complainants had the right to adduce additional testimony and additional arguments, and that unless the right was clearly waived by their agreement or conduct, notice of the appointment of a third arbitrator, and opportunity to be heard, were essential preliminaries to a valid award. This doctrine is founded in natural justice, and is not denied to be law. It is sanctioned by the authorities referred to in the opinion in 6 *C. E. Green* 205, and is not impaired by the seeming exception there cited, of *Hall* v. *Lawrence,* 4 *T. R.* 589. It is so expressed in the text books. *Russell on Arb.* 231 ;

Thomas *v.* West Jersey Railroad Co.

*Morse on Arb.* 247. "It cannot be doubted," says the latter writer, "that if a party requests the umpire to hear him and examine his witnesses, he is entitled to have his request granted. Whence it follows that he is entitled to such notice of the time and place when and where the umpire will act, as will enable him to prefer this request if he wishes to."

In *Graham* v. *Graham*, 9 *Barr* 255, it is said by Gibson, C. J., "that arbitrators are not *functi officio* by the appointment of an umpire; for they may still go on and award; but though it was their province to give notice to the parties of their own meetings, in the first instance, and of the appointment of the umpire in the second, it became his province to appoint the time and place of his sitting, and to warn the persons concerned."

Whether, therefore, the umpire be distinguished from a third arbitrator, or be, as in this case, the same, notice of his appointment and of his sitting are legally requisite. Such notice may be waived. But the waiver must be shown by the party asserting it. Every reasonable presumption will always be entertained in favor of the validity of the award, as in case of a judgment, and the party seeking to impeach it will, therefore, have upon himself the burden of proof to destroy the presumption. In the present case, the presumption is destroyed by the admitted absence of notice, which absence is fatal, unless cured by new matter affirmatively shown. The burden is obviously shifted from the party impeaching to the party supporting the award, and the controlling question here is, was the alleged agreement by the complainants to dispense with such notice and hearing, in fact, made by them, as it was supposed and understood to be by the defendants? Does the evidence clearly establish it? This question was decided by the Chancellor in the negative, and to the correctness of that decision, I entirely assent. The gentlemen whose testimony relates to this agreement, are of distinguished ability and character. Their testimony cannot be doubted or questioned on the score of any want of intentional fidelity to truth. It is unnecessary to review or

discuss it. The agreement relied on was not in writing, but oral, and the drift or effect of it, not its language or terms, are spoken to. In the words of the Chancellor, " my conclusion from the whole evidence is, that the conversation was such that the counsel for the defendants understood that it amounted to such agreement, and that the counsel for the complainants did not so understand it, nor did they intend to assent to such agreement; and that there was no such meeting or concurrence of minds as is required to constitute an agreement."

Nor can a waiver be maintained by the failure of the complainants to demand a new hearing. If notice of the appointment of the third arbitrator, and of the time and place of their subsequent meetings had been given, and the complainants had remained silent or inactive, the case would be different. A waiver might, in that case, be inferred.

Upon the ground that there was legal misconduct, in this respect, on the part of the arbitrators, the decree of the Chancellor should be affirmed, with costs.

For affirmance — THE CHANCELLOR, BEASLEY, C. J., BEDLE, CLEMENT, DEPUE, DODD, GREEN, LILLY, SCUDDER, VAN SYCKEL, WOODHULL. 11.

For reversal—None.